**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

———————————————————————— |
| |
YUHUAN SONG, |
| |
Plaintiff, |
| |
v. | Case No.: 1:24-cv-00210-ACR
| |
ASIAN AMERICANS ADVANCING |
JUSTICE – AAJC, INC., |
| |
Defendant. |
———————————————————————— |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT WITH PREJUDICE**

Defendant, Asian Americans Advancing Justice – AAJC, Inc. ("Defendant" or "AAJC"), by counsel, submits the following Memorandum of Law in support of its Motion to Dismiss Plaintiff's, Yuhuan Song ("Plaintiff" or "Ms. Song"), Amended Complaint in its entirety *with prejudice* (the "Motion"). In support thereof, Defendant states as follows:

**I.    Introduction**

This action concerns an employment dispute. Ms. Song is a former employee of AAJC who served as an Anti-Hate Communications Coordinator Fellow. AAJC hired Ms. Song based on the recommendations of several of its employees, including Michelle Boykins ("Ms. Boykins"), AAJC's Senior Director of Strategic Communications, and Marita Etcubañez ("Ms. Etcubañez"), AAJC's Senior Director for Strategic Initiatives, both of whom would serve as Ms. Song's supervisors. Based upon Ms. Song's academic and professional background, and the recommendations of Ms. Boykins and Ms. Etcubañez, AAJC had high hopes for Ms. Song and reasonably expected her to be an immediate and substantial contributor to the organization.

Regrettably, Ms. Song began having performance difficulties from the virtual outset of

her employment. These performance deficiencies were communicated to Ms. Song on multiple occasions and ultimately led to her termination during her probationary period.

During her employment at AAJC, Ms. Song expressed to Ms. Boykins on May 13, 2022 that she believed she was depressed and was experiencing "suicidal ideation." Concerned that Ms. Song was at risk to harm herself, AAJC tried to help and called 911 emergency assistance, where upon 911 dispatched the District of Columbia Metropolitan Police Department (MPD) to perform a "welfare check" on Ms. Song at her residence. As a result, Ms. Song was hospitalized over a weekend.

After Ms. Song received the necessary professional help and was no longer a danger to herself, AAJC informed Ms. Song of her termination for entirely separate reasons.

On November 7, 2023, Ms. Song initiated the underlying action in the Superior Court for the District of Columbia, which AAJC timely removed to this Court. Ms. Song alleges in her Amended Complaint that AAJC discriminated against her in violation of the Americans with Disabilities Act ("ADA") and the District of Columbia Human Rights Act ("DCHRA") by allegedly denying her reasonable accommodations, treating her in a disparate fashion, retaliating against her, and terminating her employment because of her asserted disability. In addition, Ms. Song claims that AAJC unlawfully disclosed her confidential medical information, in further violation of the ADA. However, Ms. Song fails to plead any of the factual information necessary to sustain any of her asserted claims.

As an initial matter, Ms. Song fails to allege facts to show that she suffers from a disability within the meaning of the ADA, including the failure to allege any impacted "major life activities" or any condition that impairs her ability to work. In fact, Ms. Song strongly disputes that her asserted disabilities affect her ability to work at all. The simple fact that Ms. Song was diagnosed

with Major Depressive Disorder is not enough. As a result, all of Ms. Song's disability-based claims fail and must be dismissed.

Even if the Court were able to construe Ms. Song's Amended Complaint in such a way to permit an inference that she is disabled within the meaning of the ADA and DCHRA, Ms. Song's claims still fail. Indeed, in many instances, Ms. Song's own allegations defeat her claims, pleading herself out of court.

First, Ms. Song failed to exhaust her requisite administrative remedies under the ADA to pursue a failure to accommodate claim. Ms. Song's charge of discrimination with the EEOC does not allege that AAJC failed to grant her accommodations for her asserted disabilities. Ms. Song does not state in her Charge that she ever sought accommodations from AAJC during her employment or otherwise placed AAJC notice that she wished to pursue a failure to accommodate claim, a separate and discrete action under the ADA.

Regardless, Ms. Song fails to state a failure to accommodate claim because she admits that she did not seek any accommodations from AAJC or otherwise put AAJC on notice that she might require accommodations. Ms. Song fails to even identify in the Amended Complaint what accommodations she allegedly needed for her asserted disabilities, only that the accommodations Ms. Song *may* have requested would be reasonable. This defeats Ms. Song's failure to accommodate claim.

Second, Ms. Song fails to state disparate treatment claims under the ADA and DCHRA. Ms. Song fails to identify how AAJC allegedly treated her in a disparate fashion because of her asserted disabilities (i.e., calling 911 regarding her expression of "suicidal ideations" and requiring Ms. Song to provide a doctor's note prior to returning to work), which resulted in a tangible adverse employment action.

Furthermore, Ms. Song admits that she had significant performance-related issues at AAJC, which resulted in AAJC extending her probationary period, and communicating that the organization would be placing her on a Performance Improvement Plan (PIP). Ms. Song does not allege any facts to support an inference that her termination was due, in whole or in part, to any disability, instead wholly relying upon conclusory allegations. Importantly, Ms. Song's performance deficiencies, and her awareness of them, predated her disclosure of any asserted disabilities to AAJC. The inference generated from Ms. Song's allegations support the opposite proposition: that AAJC terminated Ms. Song's employment for legitimate, non-discriminatory and non-retaliatory reasons. The simple fact that Ms. Song was diagnosed with a mental health disorder during her employment is insufficient to support an inference of discriminatory discharge. As a result, Ms. Song's disparate treatment claims fail.

Third, Ms. Song fails to state retaliation claims because Ms. Song fails to allege that she engaged in any cognizable protected activity under the ADA or DCHRA. Even if the Court construes the Amended Complaint to find that Ms. Song adequately alleged protected activity, Ms. Song fails to identify any materially adverse action taken by AAJC in response. Most of the alleged retaliatory acts by AAJC occurred before any possibly protected activity. Ms. Song also alleges that Lisa Campbell-Thornton ("Ms. Campbell-Thornton), AAJC's Vice-President of Human Resources, and not AAJC, retaliated against her by filing a private lawsuit against her about six months after Ms. Song filed a charge of discrimination. This is not conduct attributable to AAJC but, rather, to Ms. Campbell-Thornton in her personal capacity. Therefore, Ms. Song's retaliation claims fail.

Lastly, Ms. Song fails to state a claim for disclosure of confidential medical information under the ADA. Simply put, Ms. Song voluntarily disclosed her medical information to AAJC, its

staff, and its Board of Directors (including in an AAJC-wide email), not as part of any ADA employment-related medical inquiry. Accordingly, Ms. Song's unauthorized disclosure claim fails.

The Court should grant this Motion and dismiss Ms. Song's action with prejudice.

## II.    Factual and Procedural Background

### A.    *Asian Americans Advancing Justice – AAJC, Inc.*

AAJC is a national 501 (c)(3) nonprofit founded in 1991 in Washington, D.C. to protect and advance the civil and human rights for Asian Americans and Pacific Islanders. Am. Compl. ¶ 8. To do so, AAJC seeks to promote a fair and equitable society for all through education and public policy advocacy.

### B.    *Ms. Song's Employment with AAJC*

On November 22, 2021, AAJC hired Ms. Song as an Anti-Hate Communications Coordinator Fellow. Am. Compl. ¶ 9. In this role, Ms. Song was responsible for developing and implementing communications strategies and tactics to support AAJC's Anti-Hate Initiative. Am. Compl. ¶ 11. Ms. Song's job duties and responsibilities included, among other things, involvement in strategic planning for AAJC's Anti-Hate Initiative, direct communication responsibilities to expand and localize anti-hate work, developing and maintaining AAJC's external relationships and partnerships, fundraising, and supporting AAJC's mission and values. *Id*.

Ms. Song's employment with AAJC was at-will. Am. Compl. ¶¶ 14, 43. As a general policy, AAJC requires its new employees, like Ms. Song, to complete a six-month probationary period, which may be extended by an employee's supervisor. Am. Compl. ¶ 14. The purpose of this policy, among other reasons, is to permit AAJC's new employees to demonstrate their fitness for their respective role and continued employment. *See id*.

Michelle Boykins ("Ms. Boykins"), AAJC's Senior Director of Strategic Communications, was Ms. Song's direct supervisor. Am. Compl. ¶ 13. Marita Etcubañez ("Ms. Etcubañez"), AAJC's Senior Director for Strategic Initiatives, also provided some supervision of Ms. Song's work. *Id.* Given Ms. Song's prior work experience and her Master of Arts degree in Communication Management, AAJC reasonably expected Ms. Song to quickly learn the requirements of her position and immediately contribute to AAJC. Am. Compl. ¶¶ 10-13.

C.    *Ms. Song Fails to Meet AAJC's Performance Expectations During Her Probationary Period*

Although AAJC was hopeful that Ms. Song would be an immediate contributor, *see id.*, Ms. Song began having performance issues almost immediately upon hire, despite her representations to the contrary. *Compare* Am. Compl. ¶ 18 *with* Am. Compl. ¶¶ 19-20, 43.

Due to Ms. Song's performance issues, on April 28, 2022, Ms. Boykins and AAJC's Vice-President of Human Resources, Lisa Campbell-Thornton ("Ms. Campbell-Thornton"), held a probationary period meeting with Ms. Song. Am. Compl. ¶ 19. During this meeting, Ms. Boykins informed Ms. Song that her performance as the Anti-Hate Communications Coordinator Fellow was not meeting AAJC's legitimate expectations, her probationary period would be extended by an additional month, as a result, and she would be placed on a performance improvement plan (PIP). *See* Am. Compl. ¶¶ 19-20. Ms. Song did not dispute or otherwise question Ms. Boykins' assessment of her job performance during the meeting. *See id.*

D.    *Ms. Song Discloses to Ms. Boykins that She is Contemplating Suicide and AAJC Immediately Intervenes to Help Ms. Song*

Shortly after the probationary period meeting, on Friday, May 13, 2022, Ms. Song informed Ms. Boykins that she was contemplating committing suicide. *See* Am. Compl. ¶ 22. Ms. Song alleges that she expressed to Ms. Boykins that she was struggling with, what Ms. Song

believed to be, depression and thoughts of "suicidal ideation[1]." *Id*. Ms. Song alleges that she communicated to Ms. Boykins her "depression" and "suicidal ideation" were being triggered by Ms. Etcubañez "hostile" and "demeaning" style of supervision. *Id*. Ms. Song does not allege that she expressed to Ms. Boykins that her "depression" interfered with, or otherwise impacted, her ability to perform any of her job duties or the essential functions of her position as the Anti-Hate Communications Coordinator Fellow. Am. Compl. ¶ 22.

Ms. Boykins was alarmed by Ms. Song expressing that she was considering self-harm and immediately feared for Ms. Song's safety and well-being. Am. Compl. ¶¶ 22, 24. Ms. Boykins repeatedly asked Ms. Song if she did, indeed, intend to harm herself. Am. Compl. ¶ 24. Due to Ms. Song disclosing to Ms. Boykins that she was thinking of taking her own life, Ms. Boykins informed Ms. Song that she had to take action and immediately inform Ms. Campbell-Thornton of their discussion and concern over Ms. Song's mental health. Am. Compl. ¶ 25. Ms. Song did not protest. *See id*.

On May 13, 2022, Ms. Song was working from home. *See* Am. Compl. ¶¶ 25-26. Shortly after Ms. Song's discussion with Ms. Boykins, Ms. Boykins contacted Ms. Campbell-Thornton to inform her of the concerning conversation with Ms. Song and Ms. Song's expression to Ms. Boykins that she was contemplating suicide. *See id*. With Ms. Song at home and in an apparent state of crisis, Am. Compl. ¶ 26 n.2, Ms. Campbell-Thornton feared for Ms. Song's safety, and within minutes dialed 911 emergency assistance to perform a "welfare check[2]" on Ms. Song. *See*

---

[1]     "Suicidal Ideation" is generally defined to mean "the act of thinking about or a state of preoccupation with taking one's own life[;] the act of considering or planning suicide." *Suicidal Ideation*, Merriam-Webster Dictionary Online, available at: https://www.merriam-webster.com/dictionary/suicidal%20ideation (last visited on January 24, 2024).

[2]     As part of the District of Columbia Metropolitan Police Department's (MPD) mission to safeguard the District's residents, MPD officers, upon request, conduct welfare checks to verify the status of members of the public (e.g., Ms. Song). *See generally* D.C. Metropolitan Police,

Am. Compl. ¶ 26. Soon thereafter, MPD personnel were dispatched to Ms. Song's residence. Am. Compl. ¶ 27.

According to Ms. Song, MPD arrived at her residence and requested that she voluntarily accompany them for an evaluation by trained medical personnel. *See id*. Ms. Song alleges that she initially refused to accompany the police to receive medical attention but later agreed to do so. *Id*. MPD took Ms. Song to the emergency room at Medstar Washington Hospital Center for evaluation. *See* Am. Compl. ¶ 28. At the hospital, the clinicians diagnosed Ms. Song with Major Depressive Disorder and admitted her for treatment. *See* Am. Compl. ¶ 29.

On Monday, May 16, 2022, the hospital released Ms. Song from its care. Am. Compl. ¶ 33. On the same day, Ms. Song alleges that she told Ms. Campbell-Thornton of her diagnosis. Am. Compl. ¶ 30. Ms. Song alleges that Ms. Campbell-Thornton subsequently disclosed the fact of her diagnosis to AAJC's President and Executive Director, John C. Yang. *Id*. Ms. Song does not allege that she notified Ms. Campbell-Thornton, or anyone else at AAJC, that her diagnosis would impact her ability to work at AAJC, how her diagnosis would impact her ability to perform the essential functions of her position, or that she required any accommodations from AAJC to meet the essential functions of her position. *See* Am. Compl. ¶¶ 30-39.

E.     *Ms. Song's Clinician Verifies that She has No Limitations or Restrictions on Her Ability to Work*

Following Ms. Song's release from the hospital, Ms. Song alleges that she informed Ms. Campbell-Thornton of her desire to return to work during the week of May 16, 2022. *See* Am. Compl. ¶ 35. To ensure that Ms. Song was fit to return to work at AAJC, Ms. Campbell-Thornton

---

General Order – Welfare Checks, available at: https://go.mpdconline.com/GO/GO_304_02.pdf (last visited on January 24, 2024). For D.C. residents whose welfare cannot be verified, MPD investigates the matter and responds as necessary given the facts and circumstances of each incident. *Id*.

requested that Ms. Song obtain a note from her clinician in keeping with AAJC's policies. *Id*. On the same day, Ms. Song obtained a note from her clinician stating that Ms. Song had "no physical limitations or restrictions" on her ability to work. *See* May 16, 2022 Medstar Washington Hospital Center – Song Fitness to Return to Work, Exhibit 1. Seven days later, on May 23, 2022, Ms. Song submitted her clinician's note to AAJC. *Id*.; Am. Compl. ¶ 40. Ms. Song does not allege any explanation for why she waited seven days to submit the note or return to work. *See* Am. Compl. Ms. Song does not allege any loss of pay or benefits during this week. *See* Am. Compl. Ms. Song strongly disputes in the Amended Complaint any assertion that she was not fit to work nor incapable of performing her job at AAJC following her diagnosis. *See* Am. Compl. ¶ 36.

F.    *AAJC Terminates Ms. Song's Employment During Her Probationary Period*

On June 1, 2022, Ms. Boykins and Ms. Campbell-Thornton met with Ms. Song and informed her that AAJC had terminated her employment. Am. Compl. ¶ 43. AAJC terminated Ms. Song's employment during her probationary period. Am. Compl. ¶¶ 14-15, 19, 43.

G.    *Ms. Song Voluntarily Discloses the Contents of Her "Confidential Medical Information" to AAJC's Staff and Board of Directors*

Following her termination, on the same day and unprompted, Ms. Song sent an email to members of AAJC's staff and to its Board of Directors. Am. Compl. ¶ 47; June 1, 2022 Email from Ms. Song to AAJC Staff, Exhibit 2; June 1, 2022 Email from Ms. Song to AAJC Board of Directors, Exhibit 3. Therein, Ms. Song disclosed to AAJC's Staff and its Board of Directors the contents of her "confidential medical information," including information concerning (1) her mental health struggles; (2) recent diagnosis of depression; (3) thoughts of suicide; and (4) the treatment she received from Medstar Washington Hospital Center following her admission from MPD performing a "welfare check." Exs. 2-3.

On June 13, 2022, AAJC held a staff meeting to address the allegations and claims made by Ms. Song in her June 1, 2022 post-termination email. Am. Compl. ¶ 48; Exs. 2-3.

H.    *Ms. Song Files a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC)*

On November 21, 2022, Ms. Song filed a Charge of Discrimination with the EEOC (the "Charge"), which was apparently cross-filed with the D.C. Office of Human Rights (DCOHR), Am. Compl. ¶¶ 4, 49, alleging therein that AAJC discriminated against her on the basis of her asserted disability by (1) "treating [Ms. Song] differently by calling the police on [her] due to [her] disability;" (2) Ms. Campbell-Thornton "inform[ing] the Executive Director of [Ms. Song's] disability;" (3) Ms. Campbell-Thornton "requiring [Ms. Song] to have a doctor's note in order for [Ms. Song] to return to work;" (4) "terminat[ing] [Ms. Song] on the basis of [her disability]" during her probationary period; and (5) "hosting at least two all-staff meetings in which [AAJC] spoke about my protected medical information." Nov. 21, 2022 EEOC Charge of Discrimination, Exhibit 4.

I.    *Ms. Campbell-Thornton Initiates a Lawsuit Against Ms. Song for Making Defamatory Statements*

On May 23, 2023, Ms. Campbell-Thornton, in her personal capacity, initiated a legal action against Ms. Song in the Superior Court for the District of Columbia, Case No. 2023-CAB-003113, for making false and defamatory statements against her. Am. Compl. ¶ 50; *Lisa Maria Campbell-Thornton v. Yuhuan Song*, No. 2023-CAB-003113 (Filed on May 25, 2023), Exhibit 5.

J.    *Ms. Song Files Suit Against AAJC*

On August 8, 2023, the EEOC terminated its processing of Ms. Song's Charge and issued her a Notice of Right to Sue (RTS). Am. Compl. ¶ 51. On November 7, 2023, Ms. Song initiated the underlying action in the Superior Court for the District of Columbia. *See generally* Compl.

Prior to serving the complaint, on November 29, 2023, Ms. Song amended[3] her complaint. *See generally* Am. Compl. Therein, Ms. Song alleges that AAJC discriminated against her on the basis of her disability by (1) denial of reasonable accommodations, in violation of the ADA, Am. Compl. ¶¶ 52-66 (Count I); (2) disparate treatment, in violation of the ADA, Am. Compl. ¶¶ 67-78 (Count II); (3) disclosure of confidential medical information, in violation of the ADA, Am. Compl. ¶¶ 79-88 (Count III); (4) disability discrimination, in violation of the DCHRA, Am. Compl. ¶¶ 89-103 (Count IV); (5) retaliation, in violation of the ADA, Am. Compl. ¶¶ 104-10 (Count V); and (6) retaliation, in violation of the DCHRA, Am. Compl. ¶¶ 111-17 (Count VI).

On January 3, 2024, undersigned accepted service of the complaint and summons on behalf of AAJC. Dkt. No. 1 ¶ 5.

On January 24, 2023, AAJC removed Ms. Song's action to this Court, invoking the Court's original jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1441. *See generally* Dkt. No.1.

AAJC now timely moves the Court, within seven days of removal, to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

## III.    Legal Standard

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). To survive a motion to dismiss, the complaint must contain factual allegations that are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The facts alleged in the complaint must "state a claim to relief that is plausible on its face." *Id*. at 570. A claim is facially plausible when "the plaintiff pleads factual content that

---

[3]      Although Ms. Song styles her Amended Complaint to assert causes of action under Title VII of the Civil Rights Act of 1964 ("Title VII"), Am. Compl. pp. 1, 7, Ms. Song does not actually bring any claims against AAJC under Title VII. *See* Am. Compl. ¶¶ 52-117 (Counts I-VI).

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where the well-pleaded facts set forth in the complaint do not permit a court, drawing on its judicial experience and common sense, to infer more than the 'mere possibility of misconduct,' the complaint has not shown that the pleader is entitled to relief." *Performance Contracting, Inc. v. Rapid Response Constr., Inc.*, 267 F.R.D. 422, 424 (D.D.C. 2010) (quoting *Iqbal*, 556 U.S. at 679).

Normally, a motion to dismiss does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses. *See Rudder v. Williams*, 47 F. Supp. 3d 47, 50 (D.D.C. 2014) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996)). But dismissal is nevertheless appropriate when the complaint reveals the existence of a meritorious affirmative defense, such as the failure to exhaust administrative remedies. *See e.g.*, *Hicklin v. McDonald*, 110 F. Supp. 3d 16, 18 (D.D.C. 2015) ("A motion to dismiss for failure to exhaust administrative remedies is properly addressed under [ ] Rule . . . 12(b)(6)."). In ruling a motion to dismiss, the Court may consider "not only the facts alleged in the complaint, but also documents attached to or incorporated by reference in the complaint and documents attached to a motion to dismiss for which no party contests authenticity." *Carter v. Carson*, 241 F. Supp. 3d 191, 195 (D.D.C. 2017) (citation and internal quotation marks omitted).[4]

---

[4]    In support of its Motion, AAJC attaches Ms. Song's EEOC Charge. *See* Ex. 4. The Court may consider Ms. Song's Charge because the Amended Complaint specifically refers to her Charge, Am. Compl. ¶¶ 4, 49; thus, Ms. Song's Charge is incorporated into the Amended Complaint by reference. *See, e.g. Kangethe v. District of Columbia*, No. 18-64, 2019 U.S. Dist. LEXIS 9059, at *25 (D.D.C. Jan. 18, 2019)

## IV.    Argument

### A.    Ms. Song's Failure to Accommodate Claim Should Be Dismissed for Multiple Reasons

Count I of the Amended Complaint is for alleged failure to accommodate under the ADA. Am. Compl. ¶¶ 52-66. As explained below, this claim should be dismissed for multiple reasons. To the extent Ms. Song brings a failure to accommodate claim in Count IV under the DCHRA (or elsewhere), that claim should be dismissed as well.

### 1.    Ms. Song Failed to Exhaust Her Mandatory Administrative Remedies Prior to Bringing a Failure to Accommodate Claim Under the ADA

In Count I, Ms. Song asserts that AAJC "discriminated against [her] in violation of the ADA by refusing to accommodate her disability." Am. Compl. ¶ 61. This count should be dismissed because Ms. Song failed to exhaust her mandatory administrative remedies to pursue a failure to accommodate claim against AAJC under the ADA. *See* Ex. 4.

Similar to Title VII, before a plaintiff may file suit under the ADA, the plaintiff "must exhaust their administrative remedies[.]" *LaRochelle v. Lynott*, No. 22-cv-0115, 2023 U.S. Dist. LEXIS 171003, at *6 (D.D.C. Sep. 25, 2023) (citing *Marshall v. Fed. Express Corp*., 130 F. 3d 1095, 1098 (D.C. Cir. 1997)). "The purpose of the [administrative exhaustion] doctrine is to afford the agency an opportunity to resolve the matter internally and to avoid unnecessarily burdening the courts." *Artis v. Bernanke*, 630 F.3d 1031, 1034 (D.C. Cir. 2011). To do so, a plaintiff must file a charge of discrimination with the EEOC, or an appropriate state or local agency (e.g., DCOHR), within 180 days after the alleged discriminatory action occurred. *Shanks v. Int'l Union of Bricklayers & Allied Craftworkers*, No. 23-311, 2023 U.S. Dist. LEXIS 169746, at *21 (D.D.C. Sep. 22, 2023) (citing 42 U.S.C. § 12117 (incorporating the enforcement provisions of Title VII)). The 180-day period is extended to 300 days in jurisdictions where a state or local agency is

13

authorized to grant or seek relief from the alleged discriminatory practices, such as the District of Columbia. *Tucker v. Howard Univ. Hosp.*, 764 F. Supp. 2d 1, 2 (D.D.C. 2011). Any subsequent lawsuit "is limited in scope to claims that are like or reasonably related to the allegations of the charge and growing out of such allegations." *LaRochelle*, 2023 U.S. Dist. LEXIS 171003 at *7 (citation and internal quotation marks omitted).

An alleged failure to provide accommodations claim must be separately exhausted because it is considered to be a discrete act under the ADA. *Rand v. Geithner*, 609 F. Supp. 2d 97, 101 (D.D.C. 2009) (plaintiff's failure to accommodate claim was a discrete act that had to be separately exhausted); *Long v. Howard Univ.*, 512 F. Supp. 2d 1, 16 (D.D.C. 2007) *aff'd*, 550 F.3d 21 (D.C. Cir. 2008) (collecting cases confirming failure to accommodate is a discrete claim); *see also Hartzler v. Mayorkas*, No. 20-cv-3802, 2022 U.S. Dist. LEXIS 195323, at *21-22 (D.D.C. Oct. 27, 2022) ("Most judges in this district have held that plaintiffs alleging discrete acts of discrimination or retaliation must exhaust the administrative process regardless of any relationship that may exist between those discrete claims and any others.") (collecting cases).

Ms. Song had 300 days from her termination on June 1, 2022 (i.e., on or before March 28, 2023), to file a charge of discrimination with either the EEOC or DCOHR to allege that AAJC denied her accommodations under the ADA. *See AMTRAK v. Morgan*, 536 U.S. 101, 104 (2002) ("Because each discrete act starts a new clock for filing charges alleging that act, the charge must be filed within the 180- or 300-day period after the act occurred.").

In *Carter v. Wash. Post*, No. 05-1712, 2006 U.S. Dist. LEXIS 29424, at *14-17 (D.D.C. May 15, 2006), this Court dismissed an ADA failure to accommodate claim for failure to exhaust administrative remedies. In *Carter*, the plaintiff's charge did not mention accommodations and did not allege that the defendant refused to make a reasonable accommodation. *Id*. Thus, the Court

found that the charge did not put the defendant on notice that the plaintiff wished to pursue a failure to accommodate claim, and the Court dismissed that claim for failure to exhaust administrative remedies. *Id*.

Here, as in *Carter*, Ms. Song did not allege in her Charge that AAJC denied or otherwise failed to provide her with any accommodations and, thus, failed to exhaust her mandatory administrative remedies prior to bringing a failure to accommodate claim. *Compare* Ex. 4 *with* Am. Compl. ¶¶ 22-24, 52-66. On November 21, 2022, Ms. Song filed a Charge with the EEOC, alleging that AAJC discriminated against her on the basis of her disability by (1) "treating [Ms. Song] differently by calling the police on [her] due to [her] disability;" (2) Ms. Campbell-Thornton "inform[ing] the Executive Director of [Ms. Song's] disability;" (3) Ms. Campbell-Thornton "requiring [Ms. Song] to have a doctor's note in order for [Ms. Song] to return to work;" (4) "terminat[ing] [Ms. Song] on the basis of [her disability]" during her probationary period; and (5) "hosting at least two all-staff meetings in which [AAJC] spoke about my protected medical information," all of which were alleged to be in violation of the ADA. Ex. 4.

Nowhere in the Charge did Ms. Song allege that she requested an accommodation, that AAJC denied her any accommodation, or that AAJC failed in any way to accommodate her asserted disabilities. *See id*. Ms. Song's Charge is wholly silent on the issue of accommodations. *See id*. This is fatal to Ms. Song's failure to accommodate claim. *Carter*, 2006 U.S. Dist. LEXIS 29424 at *14-17.

Consequently, and just as in *Carter*, Ms. Song's ADA failure to accommodate claim in Count I of the Amended Complaint is barred because she failed to exhaust her administrative remedies by timely filing a charge of discrimination with either the EEOC or DCOHR within 300 days of her termination. *See* Ex. 4; *Morgan*, 536 U.S. at 104. Because the time by which Ms. Song

needed to exhaust this claim before either the EEOC or DCOHR has long since passed, the Court

should dismiss Ms. Song's failure to accommodate claim in Count I. *See Arthur v. D.C. Hous.

Auth.*, No. 18-cv-2037, 2020 U.S. Dist. LEXIS 64011, at *21 (D.D.C. Apr. 11, 2020) ("[D]iscrete

discriminatory acts are not actionable if time barred[.]").

### 2.    Ms. Song's Failure to Accommodate Claim Is Also Barred by the DCHRA's Statute of Limitations

In Count IV, Ms. Song brings multiple disability-based claims against AAJC under the

DCHRA, apparently including, "refusing to accommodate her disability." Am. Compl. ¶ 98. This

claim is also barred by the DCHRA's one-year statute of limitations.

Under the DCHRA, plaintiffs claiming to have been subjected to employment

discrimination in violation of the Act are given the choice to elect their remedies. *Peart v. Latham

& Watkins LLP*, 985 F. Supp. 2d 72, 88 (D.D.C. 2013) (citing D.C. Code § 2-1403.16(a)). Plaintiffs

may either pursue their claims at the administrative level before the DCOHR or initiate a private

cause of action in a court of competent jurisdiction. *See* D.C. Code § 2-1403.16(a) ("Any person

claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in

any court of competent jurisdiction for damages and such other remedies as may be appropriate,

unless such person has filed a complaint" with DCOHR).[5] Like administrative complaints filed

with DCOHR, *see* D.C. Code § 2-1403.04(a), a plaintiff must bring a private cause of action for

claims of discrimination under the Act "within *one-year* of the unlawful discriminatory act, or the

discovery thereof[.]" D.C. Code § 2-1403.16(a) (emphasis added). Should a plaintiff opt to file a

charge with either the EEOC or DCOHR instead of pursuing their claim directly in court, the Act

is tolled while the plaintiff's administrative complaint is pending. *See id.* ("The timely filing of a

---

[5]    Charges initially filed with the EEOC that are also cross-filed with DCOHR are subject to the DCHRA's tolling provision. *E.g. Shanks*, 2023 U.S. Dist. LEXIS 169746 at *23.

complaint with [DCOHR] . . . , shall toll the running of the statute of limitations while the complaint is pending."). However, the DCHRA provides for tolling *only* of claims initially filed with the EEOC or DCOHR and *not* claims directly pursued in court. *Id.*; *see also Jenkins v. District of Columbia*, No. 17-2730, 2023 U.S. Dist. LEXIS 109866, at *13 (D.D.C. June 26, 2023) (explaining that a claim under the DCHRA "is only tolled while it is pending before the EEOC/OHR"); *Pappas v. District of Columbia*, 513 F. Supp. 3d 64, 85 (D.D.C. 2021) ("District of Columbia law [generally] does not recognize an equitable tolling exception to the statute of limitations."). Thus, when a plaintiff fails to include a claim in her administrative charge, that claim is time-barred if it is not filed in a lawsuit within the one-year statute of limitations.

Here, as discussed above, Ms. Song's Charge does not allege that AAJC denied her any accommodations, or otherwise failed to accommodate her, and is silent as to whether she wished to pursue an accommodation claim against AAJC. As such, Ms. Song's failure to accommodate claim is not subject to the DCHRA's tolling provisions. *See* D.C. Code § 2-1403.16(a). Therefore, to be timely, Ms. Song must have instituted an action against AAJC for allegedly failing to accommodate her alleged disabilities by no later than June 1, 2023 (one year after her last day of work for AAJC). D.C. Code § 2-1403.16(a). Ms. Song instituted the underlying action on November 7, 2023, over five months after the DCHRA's one-year statute of limitations had run. *See generally* Compl.

Accordingly, Ms. Song's failure to accommodate claim under the DCHRA in Count IV is untimely and should be dismissed.

### 3.     Ms. Song Fails to State a Failure to Accommodate Claim Under Either the ADA or DCHRA

Even if not procedurally barred, Ms. Song's failure to accommodate claim should be dismissed. "[T]o state a claim for failure to accommodate, a plaintiff must allege that (1) she was

a qualified individual with a disability, (2) her employer had notice of her disability, and (3) her employer denied her request for a reasonable accommodation." *Perez v. D.C. Dep't of Emp't Servs.*, 305 F. Supp. 3d 51, 57 (D.D.C. 2018) (citation omitted). Courts in this District analyze DCHRA reasonable accommodation claims under the same standards as the ADA. *Shanks*, 2023 U.S. Dist. LEXIS 169746 at *26. As explained in detail below, Ms. Song does not plead any of the requisite facts to support these claims under the ADA and DCHRA.

### a.    Ms. Song Fails to Plead that She is Disabled Within the Meaning of the ADA and DCHRA

"To bring a claim for disability discrimination under the ADA or the DCHRA, a plaintiff must demonstrate that they are disabled within the meaning of the statute." *Shanks*, 2023 U.S. Dist. LEXIS 169746 at *27 (citing *Grant v. May Dep't Stores Co*., 786 A.2d 580, 583 (D.C. 2001) (the ADA's definition of "disability" is "persuasive" in construing the DCHRA)).[6] Importantly, a diagnosis alone does not satisfy the ADA's disability standard. *Ibela v. Allied Universal*, No. 21-1995-cv, 2022 U.S. App. LEXIS 12155, at *4 (2d Cir. May 5, 2022) (citing *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S 184, 198 (2002) ("It is insufficient for individuals attempting to prove disability status . . . to merely submit evidence of a medical diagnosis of an impairment."), *overturned on other grounds by* ADA Amendments Act of 2008, Pub. L 110-325, 122 Stat. 3553 (Jan. 1, 2009)). Rather, Ms. Song "must plead facts sufficient to show: (1) that [she has] a physical or mental impairment (2) that substantially limits (3) a major life activity." *Id.* (citing *Haynes v. Williams*, 392 F.3d 478, 481-82 (D.C. Cir. 2004)). While Congress amended the ADA in 2008 to broaden coverage and relax the standards under which an individual is deemed disabled, *see* 42

---

[6]    Should the Court determine that Ms. Song has failed to adequately plead that she is "disabled" within the meaning of the ADA and DCHRA, the Court must dismiss Ms. Song's disability-based claims asserted in Counts I, II, and IV because being "disabled" under the ADA and DCHRA is a necessary predicate to stating viable disability claims under these statutes.

U.S.C. § 12102(4), plaintiffs must still plead factual matter sufficient to show they have a disability to survive a motion to dismiss. *Dave v. Lanier*, 681 F. Supp. 2d 68, 74 (D.D.C. 2010).

Here, Ms. Song fails to plead the requisite facts to establish that she is disabled within the meaning of the ADA and DCHRA. Ms. Song alleges that she has two disabilities: suicidal ideation and major depression. Am. Compl. ¶¶ 53, 90. While major depression can constitute an impairment under the ADA, *e.g. Singh v. George Wash. Univ.*, 368 F. Supp. 2d 58, 63 (D.D.C. 2005) (collecting cases), Ms. Song wholly fails to plead any facts capable of showing that either her depression or suicidal ideation substantially limits a major life activity. *See* Am. Compl. ¶¶ 23, 36, 53. The only allegations Ms. Song offers in the Amended Complaint concerning her depression is that it involves "feelings of extreme sadness" that are "often accompanied by a loss of interest, hopelessness, and decreased energy" that "substantially limits her ability to perform the usual tasks and activities of daily living and affects her motivation at work." Am. Compl. ¶ 23. Ms. Song does not allege what the "usual tasks and activities of daily life" are and does make any allegations concerning a limited major life activity, much less how any major life activity is substantially limited. *Id*. With regard to suicidal ideation, Ms. Song pleads no facts at all in the Amended Complaint to explain how it is a mental impairment that substantially limits a major life activity. Instead, the only facts alleged in the Amended Complaint are that her suicidal ideation had no impact on her. Am. Compl. ¶¶ 22, 24-36. Disability claims supported by such scant, absent, and/or conclusory allegations are routinely dismissed. *See Shanks*, 2023 U.S. Dist. LEXIS 169746 at *27-29 (dismissing ADA and DCHRA failure to accommodate claim due to the plaintiff's failure to allege that he as disabled within the meaning of the statutes) (collecting cases from this District).

As such, because Ms. Song fails to plead that she is disabled within the meaning of the ADA and DCHRA, Ms. Song's failure to accommodate claims fail and should be dismissed. *Id*.

**b.**     **Ms. Song Fails to Plead that AAJC Had Notice of Her Disability**

To satisfy the second element of a failure to accommodate claim, at a minimum, Ms. Song is required to allege that AAJC knew the "nature and extent" of her alleged impairment. *Badwal v. Bd. of Trs.*, 139 F. Supp. 3d 295, 312 (D.D.C. 2015). Ms. Song fails to carry her pleading burden and show that AAJC had notice that she suffered from any disability.

Here, at best, Ms. Song's alleges that she informed AAJC, via Ms. Boykins and Ms. Campbell-Thornton, that she struggles with what she believed to be depression and suicidal ideation. Am. Compl. ¶¶ 22, 30-31. However, Ms. Song provides no allegations that would have put AAJC on notice that Ms. Song has a disability affecting whether and how she could perform her job duties such that Ms. Song may need an accommodation from AAJC. *See generally* Am. Compl.; *see also Hrdlicka v. GM LLC*, 63 F.4th 555, 567 (6th Cir. 2023) ("The employer is not required to speculate as to the extent of the employee's disability or the employee's need or desire for an accommodation."). Rather, Ms. Song adamantly states in the Amended Complaint that her depression and suicidal ideation did not render her unfit to work or otherwise impacted her ability to work at AAJC. *See* Am. Compl. ¶ 36 ("Ms. Song was *never* not fit to work, and any suggestion that she was not is rooted in a discriminatory bias against people with mental health disabilities.") (emphasis in original). The note Ms. Song submitted from her clinician to AAJC states that Ms. Song had "no physical limitations or restrictions" on her ability to work, confirming the lack of notice to AAJC that Ms. Song's depression or suicidal ideation would affect whether and how she could perform her job duties. Am. Compl. ¶ 40; Ex. 1; *see also Redmon v. United States Capitol Police*, 80 F. Supp. 3d 79, 89 (D.D.C. 2015) ("[W]here a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true."). Ms. Song is unable to even identify what accommodations she allegedly

needed from AAJC as a result of her asserted disabilities. *See, e.g.*, Am. Compl. ¶ 59 ("None of the accommodations that Ms. Song *may have requested* would have created undue hardship for AAJC.") (emphasis added).

Ms. Song has not alleged any facts in the Amended Complaint capable of demonstrating that AAJC was on notice that she required any accommodation for her depression or suicidal ideation during her employment. *See LaRochelle*, 2023 U.S. Dist. LEXIS 171003 at *19. Instead, Ms. Song has pled the opposite. Am. Compl. ¶¶ 22, 24-36, 40, 59; Ex. 1.

### c.    Ms. Song Fails to Plead that She Requested Accommodations

To be able to maintain a failure to accommodate claim, Ms. Song must also plead that she requested accommodations from AAJC. *Pappas*, 513 F. Supp. 3d at 86-87. "[T]he general rule is that, in order to state a claim under a failure to accommodate theory, plaintiffs are required to have first made an affirmative request to an employer for accommodations." *Id*. at 87 (citation omitted); *see also Flemmings v. Howard Univ.*, 198 F.3d 857, 861 (D.C. Cir. 1999) (an explicit accommodation request is a "fundamental element" of a failure-to-accommodate claim). "An employee's request for an accommodation does not need to be in writing or use the specific phrase 'reasonable accommodation,' but the request must make sufficiently clear that the employee 'wants assistance with his or her disability so that he or she may return, or continue, to work.'" *Pappas*, 513 F. Supp. 3d at 87 (quoting *Badwal*, 139 F. Supp. 3d at 313). Without a request for accommodations, "a failure to accommodate claim typically cannot succeed." *Pappas*, 513 F. Supp. 3d at 87.

Here, Ms. Song does not allege that she made any request to AAJC for accommodations. In Paragraphs 58 and 95 of the Amended Complaint, Ms. Song states that she "did not even have the chance to request accommodations for her diagnosed depression[.]" *See also* Am. Compl. ¶ 59

("None of the accommodations that Ms. Song *may have requested* would have created undue hardship for AAJC.") (emphasis added). In Paragraph 31, Ms. Song alleges that she "attempted" to request an accommodation during her conversation with Ms. Boykins on May 13, 2022, but nowhere in the Amended Complaint does Ms. Song allege that she requested an accommodation from Ms. Boykins nor does she identify the accommodation requested. *See* Am. Compl. Instead, in three paragraphs describing her discussion with Ms. Boykins in detail, there is no mention of an accommodation or any language that could be interpreted as such a request. *See* Am. Compl. ¶¶ 22-24.

The Court should not accept Ms. Song's conclusory, fact-less allegation that she requested an accommodation as true – especially when other allegations clearly state she never requested an accommodation. "Rule 12(b)(6) dismissal is appropriate where the allegations contradict the claim asserted." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. 2002) (citation omitted); *Amore ex rel. Ests. of Amore v. Accor N. Am., Inc.*, 529 F. Supp. 2d 85, 94 (D.D.C. 2008) (courts do "not accept as true self-contradictory factual allegations"). Tellingly, Ms. Song is unable to identify, at all, what accommodations she requested from AAJC, when, why she needed them, and AAJC's response to her request for accommodations; rather, Ms. Song only alleges that the accommodations she "may have requested would [not] have created undue hardship for AAJC." Am. Compl. ¶¶ 59, 96.

Simply put, Ms. Song does not allege any facts showing she requested an accommodation, much less what accommodation, to whom, when, or why the (non-existent) accommodation would allow her to perform the essential functions of her job. For this reason as well, Ms. Song's failure to accommodate claims should be dismissed.

**B.**    **Ms. Song Fails to State Claims of Disparate**
<u>**Treatment Under the ADA and DCHRA**</u>

In Counts II and IV, Ms. Song brings claims for disparate treatment based on her asserted disabilities under the ADA and DCHRA. Am. Compl. ¶¶ 67-78, 89-103. Claims of disparate treatment are also referred to as claims of intentional discrimination. *Badwal*, 139 F. Supp. 3d at 308. Both the ADA and the DCHRA prohibit employers from intentionally discriminating against an individual on the basis of their disability with respect to, among other things, discharge and the terms, conditions, and privileges of employment. *See* 42 U.S.C. § 12112(a); D.C. Code § 2-1402.11(a)(1)(A). Therefore, the same standards apply for discrimination claims brought under both the ADA and DCHRA. *Johnson v. Joseph J. Magnolia, Inc*., No. 21-cv-772, 2021 U.S. Dist. LEXIS 220519, at *10 (D.D.C. Nov. 16, 2021) (citing *McFadden v. Ballard Spahr Andrews & Ingersoll, LLP*, 611 F.3d 1, 5 (D.C. Cir. 2010)). "To state a claim for intention discrimination, a plaintiff must allege facts sufficient to show that he or she (1) had a disability within the meaning of the [ADA and DCHRA], (2) was qualified for the position with or without a reasonable accommodation, and (3) suffered an adverse employment action because of his or her disability." *Badwal*, 139 F. Supp. 3d at 308.

Initially, all of these claims should be dismissed because Ms. Song has not sufficiently alleged that she is an individual who had a disability within the meaning of the ADA or DCHRA. *See supra* Section IV. A.3.a pp. 18-20.

Notwithstanding Ms. Song's pleading deficiency, in both counts, Ms. Song alleges that AAJC discriminated against her on the basis of her alleged disabilities by (1) "[t]reating Ms. Song differently by calling the police on her due to her disability . . ., which resulted in a forced leave of absence from work; (2) "requiring Ms. Song to have a doctor's note for Ms. Song to return to work after she was involuntarily hospitalized;" and (3) "terminating Ms. Song on the basis of her

disability[.]" Am. Compl. ¶¶ 72, 93. As explained in more detail below, each of these claims fails
and should be dismissed.

        **1.**      **Ms. Song Fails to State a Claim of Discrimination Relating to AAJC's**
                  **Request for a Welfare Check on Ms. Song**

This aspect of Ms. Song's disparate treatment claim should be dismissed because it does
not involve an adverse employment action. It is settled law that an adverse employment action
means "a significant change in *employment status*, such as hiring, firing, failing to promote,
reassignment with significantly different responsibilities, or a decision causing significant change
in benefits." *Redmon*, 80 F. Supp. 3d at 86 (citation omitted) (emphasis added). "If an action is not
presumptively adverse, such as hiring and firing, an employee must experience materially adverse
consequences affecting the terms, conditions, or privileges *of employment* or future employment
opportunities such that a reasonable trier of fact could find objectively tangible harm." *Id*. at 87
(citation omitted) (emphasis added). It is axiomatic that "[n]ot everything that makes an employee
unhappy is an actionable adverse action." *Id*. (citation omitted). Accordingly, "purely subjective
injuries, such as dissatisfaction with a reassignment, public humiliation, or loss of reputation, are
not adverse actions." *Id*. (citation omitted).

Here, AAJC requesting a welfare check on Ms. Song after she used the word "suicide" to
Ms. Boykins (while working from her home) is clearly not an adverse employment action. Indeed,
Ms. Song does not offer any allegations in the Amended Complaint to remotely suggest that Ms.
Campbell-Thornton calling 911 emergency assistance is a materially adverse consequence *with
her employment* at AAJC. Ms. Song alleges that MPD's conduct was unpleasant, but this has
nothing to do with her employment status or the terms, conditions or privileges of her employment.
*See* Am. Compl. ¶¶ 25-33. To the extent Ms. Song's alleged "forced leave of absence" relates to
the three days she was hospitalized following the welfare check, this is also not an adverse

employment action. *See Redmon*, 80 F. Supp. 3d at 86-87. Whomever decided that Ms. Song should be hospitalized for three days, it was not AAJC. Am. Compl. ¶¶ 32-33. Ms. Song does not allege any material impact on her employment as a result of these three days in the hospital, including any loss of pay. Am. Compl. ¶¶ 23-33. In fact, two of these days were over the weekend of May 14 and 15. *See id*. (welfare check occurred on Friday May 13, and Ms. Song was released on Monday, May 16). Ms. Song's subjective dissatisfaction and embarrassment are not adverse employment actions, as a matter of law. *Redmon*, 80 F. Supp. 3d at 87.

Accordingly, the Court should dismiss Ms. Song's discrimination claim based on AAJC's requesting a welfare check because MPD's conduct toward Ms. Song is not an adverse employment action.

### 2. Ms. Song Fails to State a Claim of Discrimination Relating to AAJC Requiring Her to Provide a Doctor's Note to Return to Work

This aspect Ms. Song's discrimination claim within Counts II and IV fails because Ms. Song did not suffer an adverse employment action by AAJC requiring her to provide a doctor's note showing she was "fit to return to work" (Am. Compl. ¶ 39) following her involuntary hospitalization. Ms. Song does not allege any material impact to her employment as a result of AAJC requesting this note, including any loss of pay or benefits. Am. Compl. ¶¶ 34-40. Nothing in the Amended Complaint suggests that Ms. Song was terminated, demoted, reassigned, or experienced a significant change in benefits from AAJC requesting her to provide a doctor's note to return to work. Am. Compl. ¶¶ 34-40. Ms. Song was able to obtain the requested note that same day but waited a full week, from May 16 to May 23, to submit the note to AAJC and return to work. Am. Compl. ¶ 40; Ex. 1. Ms. Song does not allege why it took a week for her to submit this note and return to work or why AAJC should be responsible for the time it took her to do so. *See* Am. Compl. ¶¶ 34-40.

Even if requesting this note or the week away from work is construed to be an adverse employment action, Ms. Song does not allege any facts to support an inference that AAJC asked for this note "because of her disability." Am. Compl. ¶¶ 34-40. Ms. Song alleges in a conclusory fashion only that AAJC "treated her disparately" by requiring the note. Am. Compl. ¶ 39. However, Ms. Song's allegations in the Amended Complaint make abundantly clear that AAJC asked her to provide a doctor's note showing that she was fit to return to work because Ms. Song was involuntarily hospitalized after being removed from her home by MPD after repeatedly mentioning "suicide" to Ms. Boykins. Am. Compl. ¶¶ 22-40. There are no facts in the Amended Complaint that would tend to show that AAJC requesting this note was related to any asserted disability. *See EEOC v. Amego, Inc*., 110 F.3d 135, 149 (1st Cir. 1997) ("The syllogism which the EEOC presents -- Guglielmi was depressed, therefore Guglielmi attempted suicide, therefore any response to the attempted suicide is 'because of' her disability -breaks down."); *see also Fisher v. Basehor-Linwood Unified Sch. Dist. No. 458*, 460 F. Supp. 3d 1167, 1202 (D. Kan. 2020) ("Principal Garver's actions in response to plaintiff's panic attack at work and text message referencing suicide and depression—to the extent construed as a disability-related inquiry—were job-related and consistent with business necessity. [P]laintiff presents no summary judgment evidence from which a rational factfinder could infer that Principal Garver's actions were pretext for discrimination."); *Wade v. Montgomery Cty., Tex*., No. 4:17-CV-1040, 2019 U.S. Dist. LEXIS 190036, at *37 (S.D. Tex. Sep. 30, 2019) ("All of Plaintiff's allegations about the way she was treated at the jail are based on her status as a suicide risk, not due to her mental health impairment itself. The Court is not persuaded by counsel's argument at the hearing that the 'totality of the circumstances' in this case satisfies the requirement to show a connection between the deprivations she alleges and her [asserted] disability.").

Moreover, the ADA permits employers to request documentation that an employee is not a direct threat to themselves or others in exactly these circumstances. *See* 42 U.S.C. § 12112(d)(4); 29 C.F.R. § 1630.14; *accord Fisher*, 460 F. Supp. 3d at 1178-79, 1201-02. Thus, based on the allegations in the Amended Complaint, AAJC requesting this note is not disparate treatment based on disability.

Accordingly, the Court should dismiss Ms. Song's discrimination claim in Counts II and IV as it related to AAJC requesting that she provide a note after her hospitalization.

### 3.    Ms. Song Fails to State a Claim of Discrimination Relating to AAJC's Termination of Her Employment

In addition to the fact that Ms. Song has failed to plead that she is disabled within the meaning of the ADA and DCHRA, Ms. Song's discrimination claim still fails because she does not allege how any alleged disability played a role in AAJC's decision to terminate her employment outside of supposition and conclusory averments. *See* Am. Compl. ¶¶ 40-44, 72, 93.

Ms. Song must allege facts in the Amended Complaint to support a causal inference that her termination occurred because of her asserted disabilities, *Badwal*, 139 F. Supp. 3d at 311, meaning that Ms. Song "must connect her alleged disability [] with the adverse employment action at issue" (i.e., her termination). *Baskerville v. CBS News Inc.*, No. 18-2522, 2022 U.S. Dist. LEXIS 36931, at *23 (D.D.C. Mar. 2, 2022).

According to the Amended Complaint, Ms. Song was experiencing multiple performance problems as AAJC's Anti-Hate Communications Coordinator Fellow prior to her May 13, 2022 statement to Ms. Boykins that she was experiencing thoughts of suicide. Am. Compl. ¶¶ 19-21. On April 28, 2022, Ms. Boykins and Ms. Campbell-Thornton held a probationary period meeting with Ms. Song. Am. Compl. ¶ 19. During this meeting, Ms. Boykins informed Ms. Song that her performance was not meeting AAJC's expectations, her probationary period would be extended

by an additional month, and she would be placed on a performance improvement plan (PIP). Am. Compl. ¶¶ 19-20. Ms. Song did not dispute or otherwise question Ms. Boykins' assessment of her job performance during the meeting. *See id*. Ms. Song's pre-existing performance issues prior to her disclosure of any asserted disability undercut an inference that AAJC terminated Ms. Song's employment because of her alleged disabilities. *See, e.g.*, *Brown v. Vanguard Grp., Inc.*, No. 16-946, 2017 U.S. Dist. LEXIS 12853, at *45-46 (E.D. Pa. Jan. 30, 2017) ("Where there is a documented history of performance issues in an employee's job history prior to disclosure of an impairment, courts have hesitated to find a discriminatory motive in subsequent terminations.").

Ms. Song does not allege any facts to support an inference that her termination was due, in whole or in part, to her disability. *See* Am. Compl. ¶¶ 43-44, 72, 93. Ms. Song does not allege that AAJC made any negative statements about her alleged disability, involuntary hospital admission, or time spent out of work to receive medical treatment. *See* Am. Compl. Ms. Song does not allege that she was treated differently than a similarly situated comparator. *See* Am. Compl. Rather, Ms. Song wholly relies upon conclusory allegations and the fact that she was diagnosed with depression prior to her termination, both of which are insufficient to state a claim. *See, e.g.*, *Tyson v. State DOE & Envtl. Prot.*, No. 3:21-cv-736, 2021 U.S. Dist. LEXIS 201981, at *2 (D. Conn. Oct. 20, 2021) ("A plaintiff's subjective belief [of differential treatment based upon their race]— standing alone—is not enough to support an inference or claim that he or she has been subject to discrimination."); *Beaulieu v. Ashford Univ.*, 529 F. Supp. 3d 834, 850 (N.D. Ill. 2021) ("Plaintiff alleges no facts suggesting a causal connection between his race and the instructor's treatment— other than his own race, which alone is not enough[.]").

Ms. Song's pre-existing job performance issues coupled with her conclusory averments of discrimination are insufficient to support the plausible inference that AAJC terminated her

employment because of her alleged disabilities. *See Lewis v. Exelon Corp.*, No. 21-cv-3299, 2022 U.S. Dist. LEXIS 88735, at *7 (D.D.C. May 17, 2022) ("There are no facts alleged in the complaint that support a causal inference that Lewis' termination was due, in whole or in part, to his disability."); *Brown*, 2017 U.S. Dist. LEXIS 12853 at *45-46. Therefore, Ms. Song's disability discrimination claim should be dismissed.

### C.    Ms. Song Fails to State a Claim of Disclosure of Confidential Medical Information Under the ADA

In Count III, Ms. Song alleges that AAJC breached the confidentiality of medical records provision of the ADA. Am. Compl. ¶¶ 79-88. Ms. Song alleges that AAJC "knowingly and intentionally violated Ms. Song's rights under the ADA by impermissibly disclosing her confidential medical information that AAJC obtained through an employment-related inquiry, including Ms. Song's conversation with her supervisor." Am. Compl. ¶ 84.

Ms. Song relies upon "Title I of the ADA," quoting 42 U.S.C. § 12112(d)(3)(B). Am. Compl. ¶ 82. However, this provision of the ADA applies to employment entrance examinations and employment-related inquiries, which is not relevant to Ms. Song's claims. *See* 42 U.S.C. § 12112(d)(3). The applicable provisions are found in 42 U.S.C. § 12112(d)(4) and 29 C.F.R. § 1630.14.

Under 42 U.S.C. § 12112(d)(4), the ADA permits an employer to gather information about an employee's medical condition or history to (among other things) "make inquiries into the ability of an employee to perform job-related functions." 42 U.S.C. § 12112(d)(4)(B). Employers may also make an inquiry into whether a particular employee is an individual with a disability or as to the nature or severity of a disability, so long as the inquiry "is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A); *accord* 29 C.F.R. § 1630.14(c).

Such medical information obtained is to be "treated as a confidential medical record," except as provided for in 29 C.F.R. § 1630.14(c)(1)(i)-(iii).

Although this Circuit has not squarely addressed the standard by which plaintiffs must plead claims for disclosure of confidential medical information under the ADA, many federal courts to have addressed the issue have required plaintiffs to allege that: "(1) [her] employer obtained [her] medical information through an employment-related medical inquiry; (2) that information was disclosed rather than treated as confidential, and (3) [she] suffered a tangible injury from the disclosure." *Rivera v. City of N. Chi.*, No. 19 C 5701, 2021 U.S. Dist. LEXIS 17938, at *6 (N.D. Ill. Feb. 1, 2021); *accord Shoun v. Best Formed Plastics, Inc.*, 28 F. Supp. 3d 786, 788-89 (N.D. Ind. 2014). Importantly, "if the employee's information is obtained ***because of the employee's own voluntary disclosure*** or otherwise outside of the context of an ADA inquiry, the ADA's confidentiality provisions do not attach." *Rivera*, 2021 U.S. Dist. LEXIS 17938 at *6 (emphasis added); *see also EEOC v. Thrivent Fin. for Lutherans*, 795 F. Supp. 2d 840, 843 (E.D. Wis. 2011) ("courts have consistently held that the confidentiality requirements of [42 U.S.C. § 12112 (d)(4)] do not protect medical information that is voluntarily disclosed by the employee and, thus, is not acquired as a result of a medical inquiry by the employer.").

Ms. Song alleges that AAJC violated the ADA's confidentiality provisions in the following ways: (1) "[c]alling the police on Ms. Song . . ."; (2) "[i]nforming the Executive Director of AAJC of Ms. Song's disability . . .;" and (3) "[h]osting at least two all-staff meetings during which AAJC spoke [of] Ms. Song's confidential medical information." Am. Compl. ¶ 83.

Each of the three asserted bases by Ms. Song for AAJC's breach of the ADA's confidentiality provision fail for the same reason: Ms. Song voluntarily disclosed her medical information to Ms. Boykins and AAJC without being prompted and not as part of any ADA

employment-related medical inquiry undertaken by AAJC. *See* Am. Compl. ¶ 22 (voluntarily disclosing to Ms. Boykins on May 13, 2022 that Ms. Song "struggle[s] with depression and suicidal ideation" prior to any disclosure to MPD as part of performing a welfare check on Ms. Song); Am. Compl. ¶ 30 (voluntarily disclosing to Ms. Campbell-Thornton on or around May 13, 2022 that Ms. Song was diagnosed with Major Depression by her clinicians); Am. Compl. ¶ 47, Exs. 2-3 (voluntarily disclosing confidential information pertaining to Ms. Song's diagnosis of depression and suicidal ideation to AAJC's staff and Board of Directors in separate emails on June 1, 2022 prior to the alleged all staff meeting on July 13, 2022). The fact that Ms. Song volunteered this information to AAJC defeats her claim, as a matter of law.[7]

Accordingly, Ms. Song fails to state a claim upon which relief can be granted and Count III should be dismissed.

### D.    Ms. Song Fails to State Claims of Retaliation Under the ADA and DCHRA

In Counts V and VI, Ms. Song alleges that AAJC retaliated against her in violation of the ADA and DCHRA. Am. Compl. ¶¶ 104-117. The same standards apply to retaliation claims brought under both the ADA and DCHRA. *E.g. Pressley v. Mgmt. Support Tech., Inc.*, No. 22-2262, 2023 U.S. Dist. LEXIS 141625, at *34 (D.D.C. Aug. 14, 2023).

To state a claim of retaliation under the ADA and DCHRA, Ms. Song must plead that (1) she "engaged in protected activity," (2) she "was subjected to adverse action" by AAJC, and (3) there is a causal connection "between the adverse action and the protected activity." *Id.* at *34-35. Ms. Song's failure to adequately plead any one of these elements requires dismissal. *See, e.g.*, *Best*

---

[7]    AAJC's disclosure of Ms. Song's alleged depression and suicidal ideation to MPD would be permissible *even if* AAJC learned this information as part of an ADA-related inquiry. *See* 29 C.F.R. § 1630.14(c)(1)(ii) ("First aid and safety personnel may be informed, when appropriate, if the disability might require emergency treatment.").

*v. District of Columbia*, No. 20-1134, 2022 U.S. Dist. LEXIS 48120, at \*24 (D.D.C. Mar. 17, 2022) (dismissing plaintiff's DCHRA retaliation claim for failing to adequately plead causation). As discussed in more detail below, Ms. Song fails to plead that she engaged in protected activity or was subject to an adverse employment action. In addition, Ms. Song cannot establish that any protected activity she may have engaged in was causally connected to, and the "but for" cause of, any adverse action. Therefore, Ms. Song's retaliation claims fail.

### 1. Ms. Song Fails to Allege that She Engaged in Any Protected Activity Under the ADA and DCHRA

Ms. Song alleges the following in the Amended Complaint: (1) on May 13, 2022 Ms. Song allegedly "expressed to Ms. Boykins that Ms. Etcubañez's style of supervision was 'hostile,' 'demeaning,' and 'triggering,'" Am. Compl. ¶ 22; (2) Ms. Song made non-specific "requests for accommodation," Am. Compl. ¶¶ 105, 112; (3) on June 1, 2022 after her termination Ms. Song complained to "the AAJC staff and Board of Directors of the hostile work environment," Am. Compl. ¶¶ 47, 105, 112; and (4) she "fil[ed] a Charge of Discrimination with the EEOC on November 21, 2022. Am. Compl. ¶¶ 49, 105, 112. And although not specifically articulated by Ms. Song in the Amended Complaint, Ms. Song appears to assert that the disclosure of her diagnosis of Major Depressive Disorder to Ms. Campbell-Thornton on or around May 13, 2022 constituted an ADA and DCHRA protected activity. *See* Am. Compl. ¶¶ 106(c), 113(c).

"An activity is 'protected' for the purposes of a retaliation claim if it involves opposing alleged discriminatory treatment by the employer or participating in legal efforts against the alleged treatment." *Best*, 2022 U.S. Dist. LEXIS 48120 at \*22 (citation and internal quotation marks omitted). Importantly, not every employee's complaint is entitled to protection: the complaint must in some way allege unlawful discrimination under the statute that the employee is suing under. *See Williams v. Spencer*, 883 F. Supp. 2d 165, 177 (D.D.C. 2012); *Best*, 2022 U.S.

Dist. LEXIS 48120 at *22. Here, the first three of Ms. Song's alleged acts are not protected activity under the ADA and DCHRA.[8] Ms. Song's disclosure of her diagnosis of Major Depressive Disorder to Ms. Campbell-Thornton is also not a protected activity.

First, Ms. Song's expression to Ms. Boykins on May 13, 2022 that Ms. Etcubañez's style of supervision was "hostile," "demeaning," and "triggering," is plainly not protected activity under the ADA and DCHRA. Vague, ambiguous statements of "hostile" and "demeaning" behavior engaged in by a supervisor untethered to an allegation that the harassment occurred because of a protected characteristic is merely a "workplace complaint," and not protected activity. *E.g. Wang v. Wash. Metro. Area Transit Auth.*, 206 F. Supp. 3d 46, 80 (D.D.C. 2016). Here, Ms. Song does not allege that Ms. Etcubañez's alleged treatment of her in a "hostile" and "demeaning" manner related in any way to her asserted disabilities. *See* Am. Compl. ¶ 22.

Second, as discussed at length above, Ms. Song has not pleaded that she requested any accommodations for her alleged disabilities. *See* Am. Compl. ¶¶ 22-24, 31, 58-59, 61, 95-96, 98. In fact, Ms. Song contradicts this allegation repeatedly, and her contradictory allegations are not entitled to a presumption of truth and should be disregarded. *See Amore*, 529 F. Supp. 2d at 94 (stating that courts do "not accept as true self-contradictory factual allegations"). The retaliation counts offer no more details to support these conclusory and contradictory allegations, referring only to "requests for accommodations." Am. Compl. ¶¶ 105, 112. This is not protected activity.

Third, Ms. Song's emails to AAJC's staff and Board of Directors occurred *after* AAJC had notified Ms. Song that it terminated her employment on June 1, 2022, which Ms. Song acknowledges in her respective emails. Am. Compl. ¶ 47; Exs. 2-3. Ms. Song could not have engaged in protected oppositional activity under the ADA and DCHRA by submitting an internal

---

[8]    Ms. Song's filing of a Charge with the EEOC and DCOHR constitutes protected activity.

complaint objecting to alleged past discrimination if she was no longer employed with AAJC.

Lastly, to the extent that Ms. Song alleges that she engaged in protected activity by disclosing her diagnosis of Major Depressive Disorder to Ms. Campbell-Thornton on or around May 13, 2022, the mere disclosure of one's asserted disability is not a protected activity under the ADA or DCHRA. *See Brown*, 2017 U.S. Dist. LEXIS 12853 at *55 ("[S]imply disclosing that you have a disability is not engaging in a protected activity because it is neither an act of participating in a proceeding under the ADA, nor an opposition to discrimination made unlawful by the ADA. Therefore, Plaintiff's disclosure to Morelli that she suffered from depression is not a protected activity."); *accord Andrade v. Schnitzer Steel Indus., Inc*., No. 3:21-cv-00860, 2023 U.S. Dist. LEXIS 106120, at *40-41 (D. Or. June 16, 2023) (same) (collecting cases).

### 2.    Ms. Song Fails to Allege that She Suffered Materially Adverse Actions or a Causal Connection to Any Protected Activity

Ms. Song alleges four "unlawful employment actions" with regard to her retaliation claims: (1) "[t]reating Ms. Song differently by calling the police on her due to her disability[;]" (2) "requiring Ms. Song to have a doctor's note [] to return to work[;] and (3) "terminating Ms. Song on the basis of her disability"; and (4) Ms. Campbell-Thornton "[f]iling a defamation lawsuit . . against Ms. Song[.] Am. Compl. ¶¶ 106, 113. Three of these are not materially adverse and insufficient to support a retaliation claim.[9]

In the context of a retaliation claim, a materially adverse action is one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Reid v. Buttigieg*, No. 20-1262, 2023 U.S. Dist. LEXIS 30379, at *28 (D.D.C. Feb. 23, 2023) (quoting *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006)) (internal quotation marks omitted).

---

[9]    Ms. Song's termination is an adverse employment action.

This standard requires "objectively tangible harm." *Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006). Material adverse actions include a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Douglas v. Preston*, 559 F.3d 549, 551-52 (D.C. Cir. 2009).

To demonstrate causality, "traditional principles of but-for causation apply, and the plaintiff must show that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Segal v. Harris Teeter Supermarkets, Inc*., No. 15-1496, 2016 U.S. Dist. LEXIS 171758, at *24 (D.D.C. Dec. 13, 2016) (quoting *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013)) (internal quotation marks omitted). "[A] causal connection between the protected activity and the adverse action is the essential element of a retaliation claim[.]" *Pressley*, 2023 U.S. Dist. LEXIS 141625 at *39.

### a.    The Welfare Check

The only alleged protected activity occurring before the welfare check is Ms. Song's "complaint" to Ms. Boykins about Ms. Etcubañez's management style. Am. Compl. ¶ 22. Thus, the welfare check cannot be causally-related to any of the alleged protected activity occurring afterward. Ms. Song also does not offer any allegations in the Amended Complaint to suggest that she suffered a materially adverse consequence with her employment at AAJC following the welfare check. *See generally* Am. Compl. In any event, Ms. Song pleads that AAJC contacting 911 emergency assistance for a welfare check was *not* based in retaliation but, rather, "due to her disability." Am. Compl. ¶¶ 106, 113. This defeats Ms. Song's retaliation claim related to the welfare check.

More importantly, the Amended Complaint makes it abundantly clear that the welfare check resulted from Ms. Song's reference to "suicidal ideation" and not her complaint about Ms. Etcubañez. Am. Compl. ¶¶ 22-26. For example, in Paragraph 24, Ms. Song describes how Ms. Boykins "was alarmed" by her comments related to suicide and thoughts of suicide and how Ms. Boykins had to "immediately inform Ms. Campbell-Thornton of the discussion regarding Ms. Song's mental health." Am. Compl. ¶ 24. Ms. Song fails to plead how AAJC calling 911 to conduct a welfare check following her expression to Ms. Boykins of suicidal thoughts could dissuade a reasonable worker from objecting to discrimination. *See* Am. Compl. Thus, even if Ms. Song's "complaint" about Ms. Etcubañez's management style were protected activity (and it is not), this aspect of her retaliation claim in Counts V and VI should be dismissed.

### b.      Requesting a Doctor's Note

Like the welfare check, the only alleged protected activity to occur before AAJC requested a doctor's note from Ms. Song is her alleged "complaint" to Ms. Boykins about Ms. Etcubañez's management style. Am. Compl. ¶¶ 22-35. Initially, AAJC requesting a note from Ms. Song after her hospitalization is not a materially adverse action because it is expressly allowed by the ADA. *See* 42 U.S.C. § 12112(d)(4); 29 C.F.R. § 1630.14; *accord Fisher*, 460 F. Supp. 3d at 1178-79, 1201-02. Ms. Song also does not allege or explain why requesting this note would dissuade anyone from opposing discrimination. Am. Compl. ¶¶ 34-40.

Fatal to this aspect of Ms. Song's claim is her failure to allege that Ms. Campbell-Thornton had any knowledge of this "complaint" about Ms. Etcubañez's alleged management style when she asked for Ms. Song to provide the doctor's note. Am. Compl. ¶¶ 22-40. Instead, the Amended Complaint makes clear that Ms. Campbell-Thornton's actions were all based on Ms. Song's expression of suicidal ideation to Ms. Boykins and being hospitalized involuntary for three days.

Am. Compl. ¶¶ 22-40. There are no facts in the Amended Complaint linking Ms. Campbell-Thornton's request for the doctor's note to Ms. Song's concerns about Ms. Etcubañez's management style. *See* Am. Compl.

As with the welfare check, even if Ms. Song's complaint about Ms. Etcubañez's management style were protected activity (and it is not), the aspects of Counts V and VI based on AAJC requesting Ms. Song to provide a doctor's note prior to returning to work should be dismissed.

### c.      <u>Ms. Campbell-Thornton's Private Lawsuit</u>

Ms. Song fails to allege how Ms. Campbell-Thornton filing a lawsuit against Ms. Song on May 25, 2023 for making defamatory statements regarding Ms. Campbell-Thornton is an adverse action taken by AAJC or otherwise is imputable to AAJC. *See* Am. Compl. Ms. Campbell-Thornton is not a party to this lawsuit, and there are no facts to suggest that Ms. Campbell-Thornton was an "employer" under ADA or DCHRA or acting in her capacity as an employee of AAJC when she filed her lawsuit. *See* Am. Compl. The Court can take judicial notice of the complaint in that case, Ex. 5., to see that Ms. Campbell-Thornton is acting in her individual capacity. Indeed, Ms. Campbell-Thornton is prosecuting that lawsuit *pro se*, such that AAJC is clearly not funding it, and any allegation otherwise would be frivolous and sanctionable. *See* Fed. R. Civ. P. 11.

There is no authority for the notion that a private defamation suit could form the basis for a retaliation claim against AAJC. Therefore, the aspects of Counts V and VI based on Ms. Campbell-Thornton's personal lawsuit against Ms. Song should be dismissed.

### d.    <u>Ms. Song's Termination</u>

Ms. Song was terminated on June 1, 2022. Am. Compl. ¶ 43. Her complaint emails sent later that same day and her Charge filed months later are obviously not causally connected to her termination having occurred after the fact. Thus, the only alleged protected activity occurring prior to her termination is Ms. Song's "complaint" about Ms. Etcubañez's management style, Ms. Song's non-existent request(s) for accommodation, and Ms. Song's disclosure of her diagnosis of depression to Ms. Campbell-Thornton. Even if any of these alleged protected activities could support a retaliation claim (and they cannot for the reasons detailed above), the Amended Complaint contains no allegations regarding causation. *See* Am. Compl. Nowhere in the Amended Complaint are there any facts linking Ms. Song's concerns about Ms. Etcubañez's management style or the disclosure of her diagnosis of depression to her termination. *See* Am. Compl. Any allegation or argument that these two events are connected is purely conclusory unsupported by a single fact in the Amended Complaint.

On the other hand, the Amended Complaint contains numerous allegations linking her termination to Ms. Song's performance problems. On April 28, 2022, Ms. Boykins and Ms. Campbell-Thornton held a probationary period meeting with Ms. Song. Am. Compl. ¶ 19. During this meeting, Ms. Boykins informed Ms. Song that her performance was not meeting AAJC's expectations, her probationary period would be extended by an additional month, and she would be placed on a performance improvement plan (PIP). Am. Compl. ¶¶ 19-20. Ms. Song did not dispute or otherwise question Ms. Boykins' assessment of her job performance during the meeting. *See id*. Ms. Song's pre-existing performance issues prior to any alleged protected activity fully rebut any conclusory allegation of causation not supported by any facts. *See Brown*, 2017 U.S. Dist. LEXIS 12853 at *45-46 ("Where there is a documented history of performance issues in an

employee's job history prior to disclosure of an impairment, courts have hesitated to find a discriminatory motive in subsequent terminations."); *see also Tyson*, 2021 U.S. Dist. LEXIS 201981 at *2 ("A plaintiff's subjective belief [of differential treatment based upon their race]— standing alone—is not enough to support an inference or claim that he or she has been subject to discrimination.").

Accordingly, even if Ms. Song's complaint about Ms. Etcubañez's management style or disclosure of her diagnosis of depression were protected activity (and they are not), these aspects of Counts V and VI based on Ms. Song's termination should be dismissed. And Counts V and VI should be dismissed in their entirety.

## V.    Conclusion

For the foregoing reasons, AAJC respectfully requests that the Court grant the Motion and Dismiss Plaintiff's Amended Complaint. Given that Plaintiff has amended her complaint already, and the bases for dismissal, AAJC asks the Court to dismiss the Amended Complaint *with prejudice*.

Respectfully Submitted,

**JACKSON LEWIS P.C.**

Dated: January 31, 2024        By:        /s/ Matthew E. Kreiser
                                                        John M. Remy (Bar No. 461244)
                                                        Matthew E. Kreiser (Bar No. MD0053)
                                                        10701 Parkridge Boulevard, Suite 300
                                                        Reston, Virginia 20191
                                                        (703) 483-8300 (Telephone)
                                                        (703) 483-8301 (Fax)
                                                        john.remy@jacksonlewis.com
                                                        matthew.kreiser@jacksonlewis.com

                                                        *Counsel for Defendant Asian Americans Advancing Justice – AAJC, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 31, 2024, a true copy of the within document was

served on each party appearing *pro se* and on the attorney of record for each other party separately

appearing by delivering a copy of the same via the Court's CM/ECF electronic filing system upon:

> Abdel-Rahman Hamed, Esq. (D.C. Bar No. 1632130)
> HAMED PLLC
> P.O. Box 25085
> Washington, D.C. 20027
> (202) 888-8846 (T)
>
> *Counsel for Plaintiff Yuhuan Song*

By:  _____/s/_____
Matthew E. Kreiser (Bar No. MD0053)
**JACKSON LEWIS P.C.**
10701 Parkridge Boulevard, Suite 300
Reston, Virginia 20191
Phone: (703) 483-8300
Fax: (703) 483-8301
matthew.kreiser@jacksonlewis.com

*Counsel for Defendant Asian Americans Advancing Justice – AAJC, Inc.*

4878-6690-1664, v. 2