IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| YUHUAN SONG<br><br>*Plaintiff*,<br><br>v.<br><br>ASIAN AMERICANS ADVANCING JUSTICE – AAJC, Inc.<br><br>*Defendant*. | Case No.   1:24-cv-00210-ACR |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S**
**REQUEST FOR PRE-MOTION CONFERENCE**

Defendant AAJC filed a request for a pre-motion conference, indicating its intent to move to dismiss Plaintiff Yuhuan Song's Amended Complaint in its entirety with prejudice. Doc. 7. In this response, Ms. Song briefly describes the reasons AAJC's stated bases for dismissal lack merit.

**1. Failure to Accommodate – ADA and DCHRA**

AAJC incorrectly accuses Ms. Song of failing to exhaust her administrative remedies on this claim. Not true. In Ms. Song's response to AAJC's position statement in the EEOC proceedings (dated February 28, 2023), Ms. Song specifically alleged that "AAJC knew of her disability, and chose that rather than accommodate and support an employee with a mental health disability, they would terminate them instead." This letter is part of the EEOC Charge. What's more, the factual predicates underlying Ms. Song's failure to accommodate complaint, as outlined in the Amended Complaint, are all included in the original EEOC Charge.[1]

---

[1] AAJC is also wrong that Ms. Song's DCHRA claim is time-barred. The statute of limitations would have been tolled if her EEOC complaint (which is automatically cross-filed with the D.C. Office of Human Rights) triggered DCOHR's review. *See* D.C. Code § 2-1403.16(a).

AAJC's assertion that Ms. Song failed to state a claim is also wrong. Ms. Song's allegation that she "suffers from two discrete disabilities: suicidal ideation and major depressive disorder" is sufficient to overcome her pleading burden at the motion to dismiss stage. *See* Am. Compl. ¶¶ 7, 22, 53. The case on which AAJC relies is inapposite—it held at *summary judgment* that it is "insufficient . . . to merely submit evidence of a medical diagnosis of an impairment." *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 198 (2002). And it is simply incorrect that Ms. Song "provides no allegations that would have put AAJC on notice that Ms. Song has a disability affecting whether and how she could perform her job duties." Doc. 7 at 2-3. Ms. Song plainly alleged that she told Michelle Boykins that Marita Etcubañez's approach to supervision was hostile, demeaning, and triggering—causing her to struggle with depression and suicidal ideation. Am. Compl. ¶ 22. Construed in the light most favorable to Ms. Song, this allegation also suffices to show that Ms. Song requested an accommodation (in the form of a change to the supervision structure). Also, Ms. Song did allege that she "did not even have the chance to [formally] request accommodations for her diagnosed depression before AAJC terminated her." Am. Compl. ¶ 58.

**2. Disparate Treatment – ADA and DCHRA**

Ms. Song adequately pleaded a disparate treatment claim. With respect to AAJC contacting 911 to perform a welfare check and refusing to allow Ms. Song to return to work, these were both "materially adverse consequences affecting the terms, conditions, or privileges of [Ms. Song's] employment" at AAJC. *Redmon v. U.S. Capitol Police*, 80 F. Supp. 3d 79, 87 (D.D.C. 2015) (cleaned up). Specifically, barring Ms. Song from returning to work, by definition, materially (and negatively) affected the terms of her employment. Relatedly, Ms. Song alleged that the welfare check precipitated her hospitalization, which precipitated AAJC's refusal to allow her to return to

work. On the heels of these actions, AAJC unlawfully terminated Ms. Song—adversely affecting the conditions of her employment. At this stage, this is enough. *See Redmon*, 80 F.Supp.3d at 86.

AAJC mischaracterizes Ms. Song's allegations about purported "performance issues" (and relies only on non-binding, out-of-circuit precedent) to argue that Ms. Song's disparate impact claim with respect to her termination fails. But Ms. Song alleged that she "never received a [performance improvement plan] or any written directive, officially or unofficially, identifying and detailing her alleged deficiencies and a plan to improve." Am. Compl. ¶ 20. She also alleged that two weeks after her probationary period meeting, Ms. Boykins told her that her performance had improved. *Id.* ¶ 21. These facts support, rather than undercut, an inference that AAJC terminated Ms. Song because of her disabilities.

3. **Disclosure of Medical Information – ADA**

Ms. Song adequately pleaded that AAJC improperly disclosed her medical information in violation of the ADA. While she alleged that she told Ms. Boykins that she was suffering from suicidal ideation and depression, she did so for the purpose of putting AAJC on notice of the need for an accommodation (in the form of a change in supervision). *See* Am. Compl. ¶ 22. This disclosure did not authorize AAJC to spread Ms. Song's medical information far and wide (to the police, the executive director, in multiple all staff meetings)—this is where the ADA violation occurred. *See id.* ¶ 83. Indeed, the purpose of the ADA's confidentiality provision is to ensure that an employee's confidential information "spreads no farther than necessary to satisfy the legitimate needs of both employer and employee." *Doe v. U.S. Postal Serv.*, 317 F.3d 339, 344 (D.C. Cir. 2003). And "[u]nder the circumstances of this case," Ms. Song's conversation with Ms. Boykins against a backdrop of unsubstantiated accusations about Ms. Song's performance was akin to a

response to an employer-inquiry, "and not a voluntary disclosure." *Doe v. U.S. Postal Serv.*, 317 F.3d 339, 344 (D.C. Cir. 2003).

AAJC contends that "Ms. Song voluntarily disclosed her medical information to AAJC . . . staff, and its Board of Directors, without being prompted," citing only the paragraph in the Amended Complaint describing Ms. Song's conversation with Ms. Boykins. Whether it is true that Ms. Song later disclosed some of her medical condition to individuals other than Ms. Boykins, and under what circumstances it occurred, is not germane to the present inquiry of whether Ms. Song's Amended Complaint plausibly alleges a claim that AAJC impermissibly disseminated her confidential information.

### 4. Retaliation – ADA and DCHRA

Grasping at straws, AAJC argues that Ms. Song's retaliation claim fails because none of the activities she describes are "protected." Of course Ms. Song engaged in protected activity when she reported her supervisor's hostility. *See Paschal v. D.C.,* 65 F. Supp. 3d 172, 180 (D.D.C. 2014). And construed in the light most favorable to Ms. Song, her conversation with Ms. Boykins about Ms. Etcubañez's supervision—and the resulting impact on her mental health—constituted a request for an accommodation. The "D.C. Circuit has recognized that a request for accommodation is a protected activity under the ADA." *Cong. v. D.C.,* 277 F. Supp. 3d 82, 90 (D.D.C. 2017).

Ms. Song also alleges that AAJC responded to her EEOC Charge—a textbook example of a protected activity—by initiating a defamation lawsuit against her. *See* Am. Compl. ¶¶ 49-50. Whether Ms. Campbell-Thorton's lawsuit is attributable to AAJC—Ms. Song alleges that it is—will be borne out in discovery.

5. **Entitlement to Amend**

Should the Court find any of AAJC's arguments persuasive, dismissal should be without prejudice and with leave for Ms. Song to amend. *See Belizan v. Hershon*, 434 F.3d 579, 583 (D.C. Cir. 2006); *cf. Hajjar-Nejad v. George Washington Univ.*, 873 F. Supp. 2d 1, 12 (D.D.C. 2012) (dismissal with prejudice at 12(b)(6) stage warranted only if the plaintiff had an opportunity to amend in response to a dispositive motion).

Date:   February 14, 2024

                                      /s/Abdel-Rahman Hamed
                                       ABDEL-RAHMAN HAMED, ESQ.
                                       DC Bar No. 1632130
                                       **Hamed Law**
                                       P.O. Box 25085
                                       Washington, D.C. 20027
                                       (202) 888-8846
                                       AbdelRahman@HamedLaw.com

                                       *Counsel for Plaintiff*